Markham *v.* Stevenson.

---

HIRAM MARKHAM, Plaintiff in Error, *v.* BAZIL D. STEVENSON, Defendant in Error.

ERROR TO ADAMS.

A. sold B. a tract of land, for which B. paid a certain sum in hand, and was to pay an additional sum whenever the Supreme Court should decide that a patent title was superior to a tax title: — *Held*, that the court having decided that the revenue laws referred to by the parties were valid and constitutional, B. was released from his obligation to A.

THIS cause was heard before SKINNER, Judge, at the October term, 1851, of the Adams Circuit Court. The facts are fully stated in the opinion of the court.

WARREN and EDMUNDS, for plaintiff in error.

BROWNING and BUSHNELL, and WILLIAMS and LAWRENCE, for defendant in error.

TREAT, C. J. This was a suit in chancery, brought by Markham against Stevenson in 1850. It was founded on the fol-
18 *

lowing agreement: " This article of agreement, made and entered into this 26th day of September, 1840, between Hiram Markham, of the county of Knox, and State of Illinois, of the one part, and Bazil D. Stevenson, of the county of Adams, and State of Illinois, of the other part, witnesseth : that the said Markham has this day sold by deed unto the said Stevenson, the north-west quarter of section eleven, township two south, range seven west, for and in consideration of which the said Stevenson has paid and is to pay as follows, that is to say; he has paid the sum of $400, the receipt of which is hereby acknowledged by the said Markham ; and whereas the said Markham claims title to the land under the patentee of the United States, known under the name of a patent title, and whereas there is an outstanding tax title on said land, it is agreed between the parties, that there shall be no further payment made on said land, until after there shall have been a decision of the supreme court of the State of Illinois, fully establishing the validity of patent titles over tax titles of the State of Illinois ; and if the decision of said court should be in favor of patent titles, and that tax titles are not good, then the said Stevenson is to pay said Markham the further sum of $200 ; and whereas, it is agreed between the parties, that if the decision as aforesaid should be against tax titles, that it would be right and just to refund to the tax title owner of the land, all the money which he has paid on account of the taxes on the same, it is therefore agreed that after said decision as aforesaid, if the same should be in favor of patent titles as aforesaid, the said Stevenson shall proceed to redeem said land from all sales for taxes, and also refund all moneys which may have been paid for taxes on said land by tax title claimants ; and if the said redemption and taxes as aforesaid shall not amount to the sum of $200, then all that it lacks of amounting to the sum of $200, the said Stevenson is to pay to said Markham, so that the said Stevenson, in case the aforesaid decision shall be in favor of patent titles as aforesaid, will be required to pay $800, including the $400 already paid to the said Markham ; and on account of the redemption and taxes as aforesaid, the amount of said redemption and taxes to be deducted from the last $200; but if the said redemption and taxes should amount to more than $200, the excess is to be paid by said Stevenson without offset or charge to said Markham ; it is further agreed, that said Stevenson shall not be required to pay interest to said Markham, on account of the delay of payment of said money so to be due to him, in case of the said decision being in favor of patent titles as aforesaid, until after he shall have been informed

of said decision; and it is further agreed, that if said decision as aforesaid shall be adverse to patent titles, then said Stevenson is to pay nothing more in addition to what he has already paid; the decision aforesaid is to be a *bonâ fide* one upon due and solemn deliberation, when the case shall turn exclusively upon the validity of the laws of the State of Illinois, allowing lands to be sold for taxes, and which shall be regarded as settling the question decisively in favor of the patent titles as aforesaid. It is agreed and understood between the parties, that the laws of the State of Illinois allowing lands to be sold for taxes, and referred to in this agreement, are intended to be understood as intending only the laws of said State passed prior to the 1st day of December, 1838, and that the validity of laws passed since that time is not brought in question under this agreement.    Given under our hands and seals this 26th of September, 1840.

BAZIL D. STEVENSON,    [seal.]<br>
HIRAM MARKHAM,        [seal.]"

The bill alleged in substance, that the land was patented to Champ in 1818, and was regularly conveyed by him to Palmer, and by Palmer to the complainant, so that the latter was seized in fee of the land, at the time of the conveyance to the defendant in 1840; that the defendant went into possession of the land in 1840, and had since been in the undisturbed possession of the same; that in 1823, the auditor exposed the land to sale for the taxes of the two preceding years, and that Hoffman became the purchaser of one hundred and twenty-nine acres thereof; that the auditor conveyed that number of acres of the land to Hoffman, but did not locate the same in any part of the tract, and that Hoffman conveyed the same to Hall; that this tax title was absolutely void, and that there was no other tax title to the land; that in 1848, the defendant purchased the tax title of Hall for $100, and thus acquired the only outstanding title to the land; that in 1849, the complainant demanded the balance of the purchase-money, which the defendant refused to pay; that the condition in the agreement, that no further payment need be made unless there should be a decision of the supreme court affirming the validity of patent titles over tax titles, was nugatory and void; and the bill claimed to enforce a vendor's lien for the residue of the purchase-money.

The answer admitted the seizin of the complainant in 1840, and that the defendant had since been in the uninterrupted possession of the land; it also admitted the sale and conveyance by the auditor to Hoffman, by Hoffman to Hall, and by Hall to the defendant, as charged in the bill; it likewise ad-

mitted that there was no other tax title to the land, and that the defendant had refused to make any further payment to Markham; and it insisted that a decision had been made by the supreme court in favor of tax titles and against patent titles, long before the purchase from Hall, and that in consequence thereof, the defendant was discharged from making any further payments on account of the land.

The cause was submitted to the court on the bill, answer, and agreement; and a decree was entered dismissing the bill.

When this agreement was made, there were tax titles to a large portion of the lands in the military tract. The lands had been granted by the United States to non-residents, who had neglected to pay the taxes imposed by the State. This gave rise to controversies between those deducing title from the patentees, and those claiming title under deeds from the auditor. It was a serious question which was the better title; one about which there was much difference of opinion. It was objected to tax titles, that the revenue laws were unconstitutional. If the objection should be sustained by the courts, tax titles would be worthless. But if the objection should be overruled, tax titles would prevail over patent titles, where the proceedings under the revenue laws had been regular. The contract between these parties was made in reference to this state of things. There were conflicting claims to the land. Markham held the patent title, and Hall a tax title. Stevenson was willing to pay $800 for the land, if he could acquire a perfect title. He was also willing to pay $400 for Markham's title, and take the risk of the tax title. On this basis, the parties contracted. Stevenson paid $400, and obtained the patent title. He also agreed to pay that much more, if the objection taken to the revenue laws should be sustained by the supreme court. Such a decision would utterly defeat the outstanding tax title. And such a decision was to be pronounced, before he could be called on to pay the remaining $400. The parties made such a decision a condition precedent to the payment of the money. They also agreed that a decision by the same court overruling the objection to the revenue laws, should discharge Stevenson from all liability to Markham. A state of case has not since arisen which binds him to make any further payment. On the other hand, a decision has been made, that releases him from all liability on the agreement. The question of the validity of the revenue laws, under which the land was sold for taxes, came directly before the supreme court, at the December term, 1843, in the case of Rhinepart *v.* Schuyler. The court then expressly held those laws to be constitutional; and the de-

cision has been repeatedly affirmed in other cases. It was a decision in favor of tax titles and adverse to patent titles, within the true intent and meaning of the agreement of these parties. It fully discharged Stevenson from the obligation to pay the remaining $400. It settled the principle, that a tax title would prevail against the patent title where the requirements of the statute have been complied with. It left Stevenson at full liberty to purchase the interest of Hall, or contest the validity of his tax title. For the purposes of this case, it is immaterial whether Hall had a good title or not. The parties stipulated that no further payment need be made, unless the court should determine the revenue laws to be invalid. They contemplated a decision that would put an end to all controversy respecting the tax title, one that would dispense with any inquiry into the regularity of the proceedings. The question of the validity of this tax title was no longer to be open for contest or discussion.

The decree must be affirmed.

*Judgment affirmed.*